MARGARET E. HENNESSY, Respondent, *v.* PATRICK L. KELLEY, Appellant.

*Testimony of a physician as to facts ascertained while attending the adverse party — the fact that such adverse party has called another physician who testified to his condition on another occasion does not make it competent.*

A party to an action, who calls a physician who attended him to testify as to his physical condition, does not thereby waive his right to object, under section 834 of the Code of Civil Procedure, to the testimony of another physician offered by his adversary as to facts ascertained by the latter physician while attending such party on another occasion than that as to which the first-mentioned physician has testified.

APPEAL by the defendant, Patrick L. Kelley, from a judgment of the County Court of Oneida county in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 13th day of February, 1900, upon the verdict of a jury, and also from an order entered in said clerk's office on the 20th day of March, 1900, denying the defendant's motion for a new trial made upon the minutes.

*Henry F. Coupe* and *James Coupe* for the appellant.

*Edmund J. Wager,* for the respondent.

WILLIAMS, J. :

The judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide event.

The action was brought to recover for medical services rendered by the plaintiff for the defendant. The defense was *malpractice.*

The court erred in allowing Dr. Hamilton S. Quinn, a person duly authorized to practice physic and surgery, to disclose information which he acquired in attending the defendant, as a patient, in a professional capacity, and which was necessary to enable him to act in that capacity, contrary to the provisions of section 834 of the Code of Civil Procedure.

The plaintiff was a female physician, and was called to attend defendant in February, 1898. She diagnosed his disease at first as *grippe,* and then after a few days or a week she pronounced it to be

malaria. She continued to treat defendant for malaria until March 25, 1898, he growing constantly worse. And then another physician, Dr. Kilbourn, was called in. He made an examination and discovered defendant was suffering from inflammation of the bladder, caused by a stricture. Dr. Kilbourn, assisted by Dr. Kinloch, performed an operation, removed the stricture, and within a few days thereafter opened an abscess and removed about a pint of pus, the accumulation of which arose from an obstruction from the urethra to the bladder, caused by the stricture. The defendant thereupon recovered without the aid of any medicines whatever. Before Dr. Kilbourn was called, Drs. Brown and Quinn had called upon defendant, each making one visit.

Upon the trial evidence was given on behalf of defendant as to his condition during his whole sickness, by himself, his wife, his nurse, and Drs. Kilbourn and Kinloch. The defendant himself testified as to what took place when Dr. Brown visited him, but no evidence whatever was given by defendant or in his behalf as to what took place on the occasion of Dr. Quinn's visit and examination. The plaintiff testified in her own behalf as to the defendant's condition while she attended him. She then called Dr. Brown, and gave evidence as to his visit and examination. She then called Dr. Quinn. No one was present at his visit and examination. The doctor and patient were alone together. The defendant had not testified as to anything which occurred on this occasion. Under defendant's objection and exception Dr. Quinn was permitted to testify, among other things, as follows: " He (defendant) was pale, skin moist; there was a tender spot, and the skin was somewhat red in forward, between the thighs, weakness and exhaustion. I made a regular examination. I found a soreness in between the thighs, extending between the thighs and around forward towards the penis. I found the swelling between the thighs was tender, reddened, and for the most part hard. I extended the examination and concluded he had a stricture at the time. * * * I asked him if he had had a stricture. He answered that he had had one. I asked him when. He said several years before. I can't say how many years. I asked him if he had been operated. I think he said his water had been drawn and he recovered. I asked him if he had the stricture cut or dilated. I understood that he had never had it done. * * * I

asked him questions as to what caused it, and as a physician I don't feel at liberty to give his reply. He said that he had not informed the plaintiff as to his condition. I asked him if he told Dr. Hennessy about the stricture or about the swelling. He replied that he had not. He said he did not tell the plaintiff about it because he did not want to speak about it to a lady. The usual cause (of stricture) is gonorrhæa, commonly known as clapp. A direct injury might cause it. Urethirtis might cause stricture. He did not tell me about any injury that he had received."

This evidence certainly came within the prohibition of section 834 of the Code, and was improperly received and considered by the jury, unless the provisions of that section were expressly waived by the defendant, the patient, under section 836 of the Code. There was no *express* waiver on the trial, but, on the contrary, the defendant persistently objected to the evidence.

It is claimed, however, that such waiver was made on the trial by defendant's giving his own testimony and that of his several witnesses as to his physical condition during his whole sickness, although he gave no evidence whatever as to the occasion testified to by Dr. Quinn. This view seems to have been taken by the county judge in denying the motion to set aside the verdict and for a new trial. The law of this State is to the contrary, however. (*Hope* v. *Troy & Lansingburgh R. R. Co.,* 40 Hun, 438; 110 N. Y. 643; *Record* v. *Village of Saratoga Springs,* 46 Hun, 448; 120 N. Y. 646; *Barker* v. *Cunard Steamship Co.,* 91 Hun, 499; 157 N. Y. 693; *Morris* v. *N. Y., O. & W. Railway Co.,* 148 id. 88.)

In the *Hope* case the plaintiff had had three physicians, each at a different time from the other. She called one of them and he gave testimony as to the extent and character of her injuries. The defendant called the other two and their evidence was excluded under plaintiff's objection, based upon sections 834 and 836 of the Code of Civil Procedure. The defendant urged that when the plaintiff waived her rights with respect to one physician she opened the case to the others, but the court held that the statute did not permit such construction. The Court of Appeals affirmed this decision, two judges dissenting and one other not sitting.

In the *Record* case the plaintiff had two physicians, Drs. Hall and Grant. She called Dr. Hall and he testified as to her physical

condition. Upon the cross-examination of Dr. Hall, defendant drew out the fact that he and Dr. Grant at one time visited the plaintiff together, and had him state plaintiff's condition on that occasion and what took place when both doctors were present. The defendant then called Dr. Grant and sought to examine him as to plaintiff's condition at the time he and Dr. Hall made the visit together, and what took place there.

This evidence was excluded by the court under plaintiff's objection, based upon sections 834 and 836 of the Code. The defendant contended that plaintiff, by giving her own evidence and that of Dr. Hall as to her condition, expressly waived the privilege as to Dr. Grant. The court held that while she did consent to her own and Dr. Hall's disclosure of her condition, she did not thereby consent to Dr. Grant's disclosure, and that it could not be said that she waived her privilege as to Dr. Grant by the defendant's examination of Dr. Hall with reference to the occasion when Dr. Grant was present. The Court of Appeals affirmed this decision unanimously, one judge not sitting.

In the *Barker* case the plaintiff had several physicians, and appears to have called all but one of them, and to have given evidence by them as well as by himself as to his condition all the time from the accident until the trial. The defendant called the other physician and offered to prove by him plaintiff's condition and statements made by him in regard to the previous condition of his health. This evidence was excluded by the court under objection by the plaintiff, based upon sections 834 and 836 of the Code of Civil Procedure. The court held that plaintiff's privilege was not waived by his having called other physicians to testify to his condition anterior and subsequent to the time the witness attended him. The Court of Appeals affirmed this decision unanimously, one judge not sitting.

The *Barker* case was passed upon by the Court of Appeals later than the *Morris* case, but in the *Morris* case there was an opinion, and it may be well to note what was held in the case and some things that were said in the opinion. In that case the plaintiff was attended by two physicians at the same time, for the purpose of examining her and ascertaining the extent and nature of her injuries received in the accident. The plaintiff, on the trial, called one of the physicians, who gave important testimony with reference

to her condition. The defendant then called the other physician and sought to examine him with reference to the same transaction and examination, and was met with plaintiff's objection based upon sections 834 and 836 of the Code of Civil Procedure. The court excluded the evidence, the General Term affirmed the ruling, and the Court of Appeals reversed it unanimously, holding that the plaintiff, by calling one of the physicians and giving his evidence, waived the privilege as to the other physician present at the same time. In the course of his opinion Judge O'Brien said: "In this case it was the privilege of the plaintiff to insist that both physicians should remain silent as to all information they obtained at the consultation, but she waived this privilege when she called Dr. Payne as a witness and required him to disclose it. The plaintiff could not sever her privilege and waive it in part and retain it in part. If she waived it at all, it then ceased to exist, not partially but entirely. The testimony of Dr. Payne having been given in her behalf, every reason for excluding that of his associate ceased. The whole question turns upon the legal consequences of the plaintiff's act in calling one of the physicians as a witness. She then completely uncovered and made public what before was private and confidential. It amounted to a consent on her part that all who were present *at the interview* might speak freely as to what took place　\*　\*　\*. The statute does not attempt to define what shall in any case constitute a waiver. That is left to be determined by the courts with reference to the facts of every case, upon general principles of reason and justice. \*　\*　\* We think that a construction of the statute which permits a patient who has been attended by two physicians, *at the same examination or* consultation to call one *of* them as a witness to prove what took place or what he learned, thus making public the whole interview, and still retain the right to object to the other, is unreasonable and unjust and should not be followed. The waiver is complete *as to that consultation* when one of them is used as a witness." In this opinion the *Hope* and *Record* cases were considered. They were not regarded as conflicting with the decision in the *Morris* case.

When later the *Barker* case was before the Court of Appeals, the *Hope* and *Record* cases were followed, the *Morris* case not being regarded as in conflict therewith. This casual review of the

cases in this State leaves no doubt as to the law applicable to the question under consideration. Dr. Brown's evidence was admissible, because the defendant had given evidence as to the occasion when he was present and as to which he testified. He had waived his privilege as to that occasion. Dr. Quinn's evidence was not admissible, because no evidence with reference to the occasion when he was present had been given by the defendant. He had not in any way waived his privilege as to that occasion.

It will not do to say that this error in the admission of Dr. Quinn's evidence could have worked no injury to the defendant and should not, therefore, cause a reversal of the judgment.

In view of the peculiar nature of some parts of Dr. Quinn's examination, and in view of the result of the trial, a verdict for the plaintiff in face of the fact that the plaintiff was treating defendant for *grippe* and malaria, when his real difficulty was stricture, and its effects upon his general system, we do not feel that we ought to conclude that this evidence, improperly admitted, produced no injurious effect upon the jury.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide event.

All concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event.