GEORGE H. GUNN, Plaintiff, *v.* MERCEN C. ROBINSON, Defendant.

(Supreme Court, Monroe Trial Term, May, 1918.)

Evidence — trial — damages — waiver — Code Civ. Pro. § 834.

> Where in an action for damages alleged to have been sustained by plaintiff because of alleged negligent treatment given by defendant, an osteopathic physician, the evidence is sufficient to justify a finding that except for an occasional headache plaintiff's health was good right up to the time defendant treated him but immediately thereafter a condition of dizziness, pain in the back of his head and down his spine and partial paralysis followed, the questions whether such conditions were the result of defendant's treatment, or whether he exercised ordinary skill and reasonable care, were for the jury as was also the question of damages.

> Where defendant's counsel on cross-examination of plaintiff brought out the fact that both before and after he had been treated by defendant he had been treated by another physician, his explanation of the transaction on re-direct examination is not a waiver of his privilege under section 834 of the Code of

Civil Procedure, and the testimony of the said physician as to the treatment he gave plaintiff and as to what ailed him was properly excluded.

MOTION by defendant for a new trial on the minutes.

George Osgoodby, for plaintiff.

T. J. Mighan (David N. Salisbury, of counsel), for defendant.

CLARK, J. The defendant maintains an office in the city of Rochester, and styles himself an " Osteopathic Physician." In May, 1917, plaintiff had a severe headache and went to defendant's office for treatment, and defendant treated him, receiving pay for his services. The entire treatment did not last over five minutes, and consisted in defendant having plaintiff get on a table and relax his muscles, whereupon defendant took hold of plaintiff's head and gave it a wrench sidewise, also giving it a rotary motion, using great force in the operation. Immediately everything became blurred to plaintiff, and he felt dizzy, but as soon as the treatment was concluded and he had paid defendant he left the office and returned to his own place of business, where he stayed for a short time. The same condition of dizziness that had developed in defendant's office continued, and plaintiff had pains down the back of his neck and down his spine. After obtaining a lunch in a restaurant plaintiff went to his home, arriving there about a quarter of eight in the evening. A short time after plaintiff arrived home he went to bed, was sick at his stomach and went into an unconscious condition and remained so for a considerable time.

Medical attendance was obtained, which continued

for some weeks, and he has never been restored to the same condition of health he enjoyed before defendant treated him. On the contrary, there was evidence in the case that he lost a great deal of flesh, that the seventh cervical vertebra had been fractured by defendant's treatment, which resulted in plaintiff's partial paralysis and subsequent condition as described by the witnesses, and that it was doubtful whether he would ever fully recover his health.

In fact medical experts called by the plaintiff gave it as their opinion that he would not fully recover. Of course experts called in behalf of defendant denied that plaintiff's present condition was attributable to defendant's treatment, and stated that his injuries were not permanent in their character.

There was ample evidence in the case upon which the jury could base a finding that the condition of plaintiff's health was good, excepting for an occasional headache, right up to the time defendant treated him, but immediately following that treatment the condition of dizziness, pain in the back of his head and down the spine, and partial paralysis followed.

The questions whether or not this condition was the result of defendant's treatment, whether or not his treatment of plaintiff was too severe, and he was negligent therein and whether or not defendant exercised ordinary skill and reasonable care in the treatment of plaintiff, were all questions of fact for the jury, and their findings in favor of plaintiff are supported by sufficient evidence.

Likewise, the question of damages was clearly within the province of the jury. It having been found as a fact that plaintiff's condition was attributable to defendant's improper and negligent treatment, and that plaintiff was entitled to some damages, the amount to be awarded was for the jury, and in this case, in

Supreme Court, May, 1918. [Vol. 103.

view of the evidence, it cannot be said that the amount awarded was excessive.

Defendant urges that a new trial should be granted on the ground that the testimony of Dr. Woodruff, a physician called by defendant, was erroneously excluded. I do not think there was any error in excluding that testimony. When plaintiff was on the stand for his direct examination, not one word of testimony was given by him as to any professional services that had been rendered to him by Dr. Woodruff, but on his cross-examination defendant brought out that in 1909, and also in the fall of 1917, plaintiff had been treated by Dr. Woodruff, going into some detail as to the nature of his ailment. Then on re-direct examination plaintiff was asked to explain further with reference to the treatment given him by Dr. Woodruff, and which had been pried out of him on his cross-examination.

Then defendant called Dr. Woodruff to give testimony as to the treatment he gave plaintiff, and as to what ailed him. It will be understood that these treatments were not at the time, or anywhere near the time, he was treated by defendant, and were wholly disconnected with the transaction in question. The plaintiff had consulted Dr. Woodruff on these occasions for some other difficulty, and the relation of patient and physician had been established between them.

Any statements or communications to Dr. Woodruff at that time were clearly privileged under section 834 of the Code of Civil Procedure. If plaintiff on his direct examination had voluntarily given testimony with reference to his professional relations to Dr. Woodruff, he would have been deemed to have waived the privilege, and to have so far opened the door that the testimony of the physician would have been com-

petent, but when any relations he had with Dr. Wood-ruff were forced out of him by the defendant on cross-examination his subsequent explanation of the transaction on re-direct examination should not be deemed a waiver of his privilege, and I am convinced that the exclusion of the testimony of Dr. Woodruff was proper. Code Civ. Pro. §§ 834–836; *Butler* v. *Manhattan Ry. Co.,* 3 Misc. Rep. 453; *Dunkle* v. *McAllister,* 70 App. Div. 273; *Capron* v. *Douglas,* 193 N. Y. 11; *Hennessy* v. *Kelley,* 55 App. Div. 449; 40 Cyc. 2387.

No other error pointed out seems to be of sufficient importance to require a new trial, and this motion must therefore be denied.

Motion denied.